**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

M&M DEVELOPMENT, LLC, and
DOWNTOWN WORKS URBAN
RENEWAL HOUSING CO., LLC,

      *Plaintiffs*,

      v.

WATTS RESTORATION CO., INC.,

      *Defendant*.

Civil Action No. 21-cv-09274

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    This case arises out of an arbitration between a general contractor and sub-contractor over a payment dispute. Plaintiffs M&M Development, LLC ("M&M") and Downtown Works Urban Renewal Housing Co., LLC ("Downtown Works" and together with M&M, "Plaintiffs") brought this action against Watts Restoration Co., Inc. ("Watts") alleging breach of contract and related causes of action. Currently pending before the Court are Plaintiffs' motion to vacate the arbitration award, D.E. 16, and Defendant's cross-motion to confirm the arbitration award, for entry of a judgment, and to dismiss the action, D.E. 18. The Court reviewed the parties' submissions[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).

---

[1] The submissions consist of Plaintiffs' motion to vacate the arbitration award, D.E. 16 ("Br."); Defendant's opposition and cross-motion to confirm the arbitration award, for entry of a judgment, and to dismiss the action, D.E. 18 ("Opp."); Plaintiffs' opposition to Defendant's motion, D.E. 24 ("Pl. Opp."); and Defendant's further reply to both motions, D.E. 25 ("Reply").

For the following reasons, Plaintiffs' motion to vacate is **DENIED** and Defendant's cross-motion to confirm, enter judgment, and dismiss is **GRANTED**.

## I.   BACKGROUND

Plaintiff M&M was the general contractor for the development of the Pierre Building in Camden, New Jersey.  The building was owned by Plaintiff Downtown Works.  M&M and Watts entered into a contract (the "Contract") for Watts' performance of masonry work on the project. The Contract contains the following arbitration provision:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Construction Industry Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. . . . The decision rendered by the American Arbitration Association shall be final.

D.E. 18-3, Ex. A ("Contract") § 6.2.2.  The Contract further states that, "[e]xcept to the extent of a conflict with a specific term or condition contained in the [Contract], the General Conditions governing this Subcontract shall be the edition of AIA Document A201, General Conditions of the Contract for Construction, current as of the date of this Agreement."  Contract § 1.2.  AIA Document A201 states that claims arising out of a contract must be presented to an initial decision maker, the Architect, "as a condition precedent to mediation of any Claim."  D.E. 16-39 ("AIA Document A201") § 15.2.1.  Further, AIA Document A201 states that any such claims "shall be subject to mediation as a condition precedent to binding dispute resolution."  AIA Document A201 § 15.3.1.

Another document titled "Subcontractor Agreement" states that any arbitration shall be conducted by three arbitrators.  Contract at 49.  While the "Subcontractor Agreement" was seemingly included as part of the Contract in the parties' arbitration submissions, the Contract's

"List of Contents Form" does not list the "Subcontractor Agreement" and shows that Exhibit F was a one-page document titled "Insurance Requirements." *Id.* at 13. Exhibit F is, in fact, a one-page document titled "Insurance Requirements," and the "Subcontractor Agreement" is inserted directly after it without explanation or separate identification. In another section, the Contract explicitly lists the documents that comprise the agreement and does not include the "Subcontractor Agreement." *Id.* §16.1.4. The arbitration provisions in § 6 of the Contract do not require three arbitrators. *Id.* § 6.2.2.

On November 19, 2020, Watts filed a "Demand for Arbitration" with the American Arbitration Association ("AAA") against Plaintiffs claiming that Watts was not paid for the work it performed on the project. D.E. 16-13. M&M participated in the arbitration under a reservation of rights and Downtown Works, which was purportedly never served, did not participate. D.E. 16-4 ("Teijido Cert.") ¶ 48. According to Plaintiffs, "M&M received notice indirectly through a former employee, Aaron Weinbach, via e-mail" and "Downtown Works was never served with formal notice." Br. at 7. Defendant notes that Plaintiffs share a common managing member, that M&M itself is a managing member of Downtown Works, and that the two entities share a business address. *See* D.E. 16-42 ("Award") at 2. Mary Jo Gilsdorf was appointed as the arbitrator. According to Arbitrator Gilsdorf "AAA continued to copy and provide notice to both M & M and Downtown Works" throughout the arbitration. *Id*. Additionally, Arbitrator Gilsdorf noted in the Award that initially, "M&M and Downtown Works were both represented by Mr. Teijido," but that Mr. Teijido later claimed that Downtown Works was not participating in the proceedings. *Id.* Nonetheless, Mr. Teijido was "ordered in orders No. Two and Five to take all appropriate measures to ensure full notice of all proceedings to Downtown Works – whether or not they choose to participate or not in these proceedings." *Id.*

On March 7, 2021, both Plaintiffs, jointly represented by Mr. Teijido, sued Defendant in New Jersey Superior Court and the action was later removed to this Court.  Plaintiffs filed a counterclaim in the arbitration, which was substantively the same as the state court complaint that serves as the operative Complaint in this matter.  Award at 2; D.E. 1; D.E. 16-32.  Plaintiffs also filed a motion to dismiss the arbitration, which raised many of the issues currently presented and which was denied by Arbitrator Gilsdorf.  Award at 2; D.E. 16-19.

On January 7, 2022, Arbitrator Gilsdorf rendered an award in favor of Watts in the amount of $152,410.68, which was comprised of $48,825 for "Retainage Wrongfully Withheld," $5,549.24 in interest, and $98,036.44 in attorney's fees.  Award at 7.  Arbitrator Gilsdorf also awarded Watts $12,287.50 representing AAA fees.  *Id.* at 8.  Thus, the total sum due to Watts was $164,698.18.  The Award was issued against M&M and Downtown Works jointly and severally. *Id.*

Plaintiffs claim that several factors infected the arbitration process, rendering the award subject to vacatur.  First, Plaintiffs claim that the hearing location was in Philadelphia, Pennsylvania, despite the Contract's requirement that the arbitration take place in the same place as the project, Camden.[2]  Second, Plaintiffs argue that Downtown Works was not a party to the contract between M&M and Watts, and thus was not required to arbitrate.  Third, Plaintiffs assert that Downtown Works was never notified of the arbitration or properly served.  Fourth, Plaintiffs claim that a provision in the "Subcontractor Agreement" required a panel of three arbitrators, but the arbitration only had one.  Fifth, Plaintiffs argue that Watts waived the right to arbitrate by

---

[2] It appears that while the hearing locale requested for the arbitration was Philadelphia, Pennsylvania, D.E. 16-13, all hearings took place via videoconference.  *See*, e.g., D.E. 18-5 at 3 ("The hearing shall be conducted using the Zoom Platform according to the Virtual Arbitration Protocols attached hereto.").

failing to meet conditions precedent; namely, Watts did not first submit the dispute to the project architect and did not engage in mediation before pursuing arbitration. Sixth, Plaintiffs claim that Watts incorrectly designated the arbitration for the "fast track," which expedited certain procedural items and was not proper in this case. And seventh, Plaintiffs assert that Arbitrator Gilsdorf was conflicted because she was a member of a bar section with a lawyer employed at Watts' counsel's firm and had once inquired whether that lawyer was available to mediate an unrelated case.[3] Plaintiffs make several other conclusory allegations of impropriety, such as "AAA's insistence on moving forward with venue and arbitrator selection in the midst of the holidays/pandemic," the arbitrator's failure to grant extensions, and "ex-parte communications with AAA."[4] Br. at 23-24.

Defendant disputes many of these facts and argues that none of them render the Award subject to vacatur. For instance, Defendants claim that

> Plaintiffs simply ignored their opportunities to participate in arbitrator selection or the case designation process: at no time did Plaintiffs seek to have any of the arbitrators stricken, object to the Fast Track designation, make any objections to any of the proposed arbitrators or request additional time to address any of these procedural matters.

Opp. at 2. Defendant also points out that Arbitrator Gilsdorf found that the "Subcontractor Agreement," which purportedly required three arbitrators, was "not controlling nor a part of the controlling [Contract]." D.E. 16-29 at 2. Watts also states that "Downtown Works continued to make objections and arguments throughout the arbitration proceedings," despite Mr. Teijido's claim that he only represented M&M and that Downtown Works was not participating in the

---

[3] The lawyer, William Weber, was not involved in the instant matter or underlying arbitration and the mediation referral never materialized. D.E. 16-15.

[4] Plaintiffs raise additional factual arguments beyond those set forth in this Opinion and the Court finds it impractical to address each one. To the extent not directly addressed herein, those facts were unsupported, not relevant, not presented as a basis for vacating the arbitration award, not a valid legal basis to do so, or some combination thereof.

arbitration.  D.E. 18-2 ("Reynolds Cert.") ¶ 49.  Further, Defendant argues that Plaintiffs failed "to demand mediation despite being afforded a stay of the arbitration proceedings in which to do so."  Opp. at 25.

## II.   STANDARD OF REVIEW

As an initial matter, Plaintiffs allege that New Jersey law should apply as to whether the Award should be vacated.  Br. at 11-12.  Parties must "express a 'clear intent' to apply state law vacatur standards" in lieu of the standards in the FAA.  *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 293 (3d Cir. 2010).  AIA Document A201, which is incorporated into the Contract, states that the law of the place where the project is located, *i.e.* New Jersey, is to apply.  AIA Document A201 § 13.1.  However, the same provision goes on to state that "[i]f the parties have selected arbitration as the method of binding dispute resolution, the Federal Arbitration Act shall govern[.]"[5]  *Id.*  Thus, there is no "clear intent" to supplant the FAA's vacatur standards and the Federal Arbitration Act, not New Jersey's analogue, controls the analysis.

The Federal Arbitration Act ("FAA") establishes a "strong presumption" in favor of enforcing arbitration awards.  *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  Indeed, the statute only allows vacatur of an arbitration award on four grounds:

> (1) where the award was produced by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

---

[5] Plaintiffs selectively cited to AIA Document A201 § 13.1 without providing that section of the document to the Court.  *See* D.E. 16-39.  The Court takes judicial notice of the entirety of Section 13.1.  Moreover, even without this provision, the Court finds that Plaintiffs have not shown a "clear intent" to displace the FAA's vacatur standards.

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  These four provisions provide the exclusive grounds for vacatur of an arbitration award.  *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).  "The party seeking to overturn an award bears a heavy burden, as these are 'exceedingly narrow circumstances' . . . and courts accord arbitration decisions exceptional deference."  *Handley v. Chase Bank USA NA*, 387 F. App'x 166, 168 (3d Cir. 2010) (citation omitted).  As such, courts "begin with the presumption that the award is enforceable."  *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 251 (3d Cir. 2013) (citation omitted).  An award may not be vacated solely because the reviewing court views the merits of the underlying claim differently or because the court finds the arbitrator to have made a factual or legal errors.  *See, e.g.*, *Major League Umpires Ass'n v. Am. League of Pro. Baseball Clubs*, 357 F.3d 272, 279-80 (3d Cir. 2004); *see also Ario*, 618 F.3d at 296 (noting that a court's role is not to correct factual or legal errors and that an award will be upheld "even if the arbitrator engaged in 'improvident, even silly, factfinding.'" (citation omitted)).  A court's "review of an arbitration award is quite narrow," and requires "substantial deference" to the arbitrator.  *Giant Eagle, Inc. v. United Food & Com. Workers Union Local 23*, 547 F. App'x 106, 108 (3d Cir. 2013) (citation omitted).  The Court "must grant" an order confirming an arbitration award "unless the award is vacated, modified, or corrected[.]"  9. U.S.C. § 9.

III.   **ANALYSIS**

    A. **Plaintiffs' Motion to Vacate**

        1.   **Section 10(a)(1) – Corruption, Fraud or Undue Means**

To establish corruption, fraud, or undue means sufficient to vacate an arbitration award, the moving party must establish the wrongful conduct by clear and convincing evidence, show that the conduct could not have been discoverable upon the exercise of due diligence prior to the arbitration, and demonstrate that the conduct materially related to an issue in the arbitration. *Int'l Bhd. of Teamsters, Local 701 v. CBF Trucking, Inc.*, No. Civ. 09-5525, 2010 WL 2400400, at *2 (D.N.J. June 10, 2010). Here, Plaintiffs allege that they have shown "undue means." In interpreting undue means, the Eighth Circuit observed the following:

> The term "undue means" must be read in conjunction with the words "fraud" and "corruption" that precede it in the statute. *See Drayer v. Krasner,* 572 F.2d 348, 352 (2d Cir.), *cert. denied,* 436 U.S. 948 (1978). Consistent with the plain meaning of fraud and corruption, and with the limited scope of judicial review of arbitration awards, other circuits have uniformly construed the term undue means as requiring proof of intentional misconduct. *See American Postal Workers Union, AFL—CIO v. United States Postal Serv.,* 52 F.3d 359, 362 (D.C.Cir.1995) (undue means limited to conduct "equivalent in gravity to corruption or fraud, such as a physical threat to an arbitrator"); *A.G. Edwards & Sons, Inc. v. McCollough,* 967 F.2d 1401, 1403 (9th Cir.1992) (undue means "connotes behavior that is immoral if not illegal"), *cert. denied,* 506 U.S. 1050 (1993); *Shearson Hayden Stone, Inc. v. Liang,* 493 F.Supp. 104, 108 (N.D.Ill.1980) (" 'undue means' requires some type of bad faith in the procurement of the award"), *aff'd,* 653 F.2d 310 (7th Cir.1981). Undue means does not include "sloppy or overzealous lawyering." *Edwards,* 967 F.2d at 1403. In an unreported case, the Sixth Circuit applied this strict standard in rejecting a claim that a party used undue means to prevail in a discovery dispute before the arbitrators. *See Pontiac Trail Medical Clinic, P.C. v. PaineWebber, Inc.,* 1 F.3d 1241, 1993 WL 288301 at *5 (6th Cir.1993). We agree with those decisions.

*PaineWebber Grp., Inc. v. Zinsmeyer Trs. P'ship*, 187 F.3d 988, 991 (8th Cir. 1999).

Plaintiffs fall well short of demonstrating undue means. Plaintiffs merely state in conclusory fashion that undue means has been "easily established" and then list twelve enumerated (alleged) facts in support. Br. at 23-24. Among the bases, Plaintiffs point to "moving forward with venue and arbitrator selection in the midst of the holidays/pandemic" and Defendant's "failure to mediate[.]" *Id.* Noticeably absent from Plaintiffs' brief is any analysis or authority demonstrating that undue means was established for similar reasons. The Court denies relief on this ground.

### 2. Section 10(a)(2) – Evident Partiality or Corruption of the Arbitrator

An arbitration award is subject to vacatur under § 10(a)(2) "only if a reasonable person would necessarily conclude that the arbitrator was partial to one side." *Freeman*, 709 F.3d at 254. "The conclusion of bias must be ineluctable, the favorable treatment unilateral." *Id.* at 253. "[T]he statute requires more than a vague appearance of bias." *Id.*; *Kaplan v. First Options of Chi., Inc.*, 19 F.3d 1503, 1523 n.30 (3d Cir. 1994) ("'Evident partiality' is strong language and requires proof of circumstances 'powerfully suggestive of bias.'").

Plaintiffs do not meet this standard. While Plaintiffs allege that Arbitrator Gilsdorf's professional relationship with a lawyer in Watts' counsel's firm created the appearance of bias or partiality, Br. at 26, the law is clear that mere appearances are insufficient to vacate an arbitration award. Instead, Plaintiffs were required to show that the bias was "evident," "ineluctable" or a necessary conclusion of a reasonable person. *Freeman*, 709 F.3d at 253-54. Plaintiffs point to no authority indicating that the standard is met because the arbitrator was a member of a county bar section with a lawyer employed at Watts' counsel's firm and had once inquired whether that lawyer was available to mediate an unrelated case. *Cf. id.* at 254-55 (finding that "relatively small" undisclosed campaign contributions to an arbitrator from the minority owner of a party did not

establish evident partiality).  Thus, Plaintiffs have not established that Arbitrator Gilsdorf was evidently partial or corrupt.

Plaintiffs cite to *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145 (1968), in support.  Pl. Opp. at 12.  That case involved a three-arbitrator panel, where the "neutral" arbitrator was an engineering consultant who had received $12,000 in consulting fees from one of the parties and rendered services to that party in connection with the projects involved in the case. *Id.* at 146.  Because of the "close financial relations that had existed between [the arbitrator and one party] for a period of years," the Supreme Court found that the arbitration award should be vacated. *Id.* at 147.  The purported conflict here—Arbitrator Gilsdorf's common membership in a bar association section with an attorney from Watts' counsel's firm and the discussion of a potential mediation referral of an unrelated case (which never materialized)—is patently dissimilar and demonstrates that *Commonwealth Coatings* inapposite.

### 3. Section 10(a)(3) – Misconduct or Misbehavior of the Arbitrator

To establish misconduct or misbehavior of the arbitrator sufficient to vacate an award, a moving party must demonstrate misconduct that "so affects the rights of a party that it may be said that he was deprived of a fair hearing."  *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 245 (3d Cir. 2021) (citing *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)).  "A 'fair hearing' is one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator."  *Id.*

In the Award, Arbitrator Gilsdorf recounted that "AAA continued to copy and provide notice to both M & M and Downtown Works[.]"[6]  Award at 2.  Plaintiffs themselves recount the

---

[6] Plaintiffs dispute the propriety of service on Downtown Works in the underlying arbitration.  The Contract states that the arbitration shall be governed by the Construction Industry Arbitration Rules, Contract § 6.2.2, which permit broad service via email, and other means, addressed to the

various instances in which they were given the opportunity to raise arguments before the arbitrator. *See, e.g.*, Teijido Cert. ¶¶ 13, 18-19, 27, 29, 32-33, 48; D.E. 16-19; D.E. 16-32.  Likewise, based on the numerous orders issued in the arbitration, it appears that Arbitrator Gilsdorf legitimately considered and addressed Plaintiffs' arguments.  *See* D.E. 16-20-D.E.16-30.  Indeed, Arbitrator Gilsdorf noted that Plaintiffs were given ample opportunity to raise arguments and objections, which they took advantage of with "repetitive and often unfounded objections to every aspect of the proceedings."  Award at 8.  Thus, none of the purported issues rise to the level of depriving Plaintiffs of a fair hearing, and Plaintiffs' motion is denied on this ground.

### 4.  Section 10(a)(4) – Arbitrator Exceeding Her Powers

An award is subject to vacatur under § 10(a)(4) only if the arbitrator "decides an issue not submitted to [her], grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether."  *Sutter v. Oxford Health Plans LLC*, 675 F.3d 215, 219-20 (3d Cir. 2012).  The Court will not vacate an award if the arbitrator "makes a good faith attempt" at interpreting and enforcing the contract, even if there are "serious errors or law or fact" in the decision.  *Id.* at 220.  "[T]here must be absolutely no support at all in the record justifying the arbitrator's determinations for a

---

party or its representative at the last known address.  AAA, Construction Industry Arbitration Rules and Mediation Procedures, R-44 (2015).  Plaintiffs fail to submit any evidence that they were not properly served in accordance with these rules.  In "Scheduling Order One," Arbitrator Gilsdorf stated that Mr. Teijido had previously "indicated that he was entering his appearance on behalf of all Respondents."  D.E. 18-5 at 1.  The Award further states that Mr Teijido was "ordered in Orders No. Two and Five to take all appropriate measures to ensure full notice of all proceedings to Downtown Works – whether or not they chose to participate or not in these proceedings."  Award at 2.  The Award also noted that M&M and Downtown Works share a managing member, that M&M itself is a managing member of Downtown Works, and that the two entities share a business address.  *Id.* at 2 n.1.  M&M and Downtown Works were also both represented by Mr. Teijido in the action brought in New Jersey Superior Court and later removed to this Court.  Given the broad standards in R-44, which permit notice to a party *or its representative*, Plaintiffs have not established that notice here was improper.

court to deny enforcement of an award." *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995) (citing *News Am. Publ'ns, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)).

Plaintiffs have not met the substantial burden of showing that Arbitrator Gilsdorf was "completely irrational," decided issues not submitted to her, or granted relief that cannot be derived from the parties' agreement.  While Plaintiffs point to many perceived errors of law, these purported errors are insufficient to vacate an arbitration award.  The Contract demonstrates that the parties bargained for an arbitrator's determination as to the merits of their claims, and the Court will not substitute its own views.  *Major League Umpires Ass'n*, 357 F.3d at 280; *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747 (3d Cir. 1990) ("Since the parties have bargained for the arbitrator's decision, 'it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." (citation omitted)).

Plaintiffs argue that Downtown Works was not required to arbitrate because it was not a party to the Contract.  Br. at 8-11.  "Generally speaking, a party cannot be required to participate in arbitration, rather than adjudication, of a dispute unless it has agreed to submit the dispute, or disputes of like nature, to the arbitral process." *Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n, Ltd.*, 108 F. App'x 35, 40 (3d Cir. 2004) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  However, the Third Circuit has "recognized that non-signatories to an arbitration agreement may be bound by that agreement through the application of 'traditional principles of contract and agency law,'" which includes third-party beneficiary status.  *Id.*  Thus, third-party beneficiaries of a contract containing an arbitration

provision may be bound by that provision.  *Id*.; *Derbin v. Access Wealth Mgmt., LLC*, No. 11-812, 2011 WL 4751992, at *3 (D.N.J. Oct. 7, 2011) (stating that an arbitration clause may be "enforced by or against nonparties to the contract through . . . third-party beneficiary theories"); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir. 2001) ("[C]ourts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.").

Here, while the Contract states that it "shall not be construed to create a contractual relationship of any kind . . . between the Owner [Downtown Works] and the Subcontractor [Watts]," Plaintiffs' own allegations demonstrate otherwise.  The Complaint explicitly alleges that "Downtown Works *is a third-party beneficiary of the agreement* between M&M and Watts[.]" D.E. 1 Ex. B ("Complaint") ¶ 41 (emphasis added).  As an admitted third-party beneficiary of the Contract, Downtown Works may be bound by the Contract's arbitration provision as to claims arising out of and relating to the Contract.  Arbitrator Gilsdorf had a legal basis for finding that Downtown Works' explicit invocation of its purported rights under the Contract prevents them from at the same time claiming that they are not bound by certain other terms, *i.e.*, the arbitration provisions.[7]  In sum, the Award may not be vacated on the basis of Arbitrator Gilsdorf's decision to not dismiss Downtown Works from the arbitration.  That decision was not "completely irrational," nor was it beyond her powers.

Plaintiffs next note that the arbitration was conducted in Philadelphia, Pennsylvania despite AIA Document A201's provision stating that "[t]he Arbitration shall be conducted in the place

---

[7] Arbitrator Gilsdorf heard the same argument and reached the same conclusion on the same basis in "Order Number Two" of the underlying arbitration.  D.E. 18-7.

where the Project is located, unless another location is mutually agreed upon." AIA Document

A201 § 15.4.1. That same document, however, states that the arbitration is governed by the

"Construction Industry Arbitration Rules in effect on the date of the agreement." *Id.* Arbitrator

Gilsdorf cited to those rules in Order Number Two (D.E. 16-30) and Order Number Three (D.E.

16-29), specifically R-12, R-13, and R-33, which permit the arbitration locale to be the city nearest

the project site where the contract is ambiguous and permit the use of video conferencing

technology. Given the Contract's incorporation of somewhat conflicting provisions, and the

Construction Industry Arbitration Rules' allowance of video conferencing, the Court cannot say

that Arbitrator Gilsdorf was completely irrational in her determination that M&M and Downtown

Works' motion to dismiss on venue grounds was to be denied, and that the arbitration could

proceed via video conferences while formally located in Philadelphia, Pennsylvania.

Plaintiffs also argue that the arbitration should have had a panel of three arbitrators, as

opposed to one. Arbitrator Gilsdorf found that the arbitration clause purportedly requiring three

arbitrators "is not controlling nor a part of the controlling Subcontract," largely because it was not

included in the "List of Contents Form" of the fully integrated Contract. D.E. 16-29 at 2.

Arbitrator Gilsdorf also relied on the fact that Exhibit F to the Contract was intended to be the one-

page "Insurance Requirements" document, and that the "Subcontractor Agreement" followed

immediately after that document without being separately identified. *Id.* Additionally, the

"Subcontractor Agreement" was not listed in § 16.1.4, which was intended to comprehensively list

the Contract's incorporated exhibits. Plaintiffs offer no evidence that this finding was completely

irrational; they simply present the Court with the same document and re-hash the same legal

argument. Arbitrator Gilsdorf was not completely irrational in finding that the "Subcontractor

Agreement" was not a part of the Contract given the fact that it does not appear in the "List of

Contents Form," in § 16.1.4, and given its unexplained placement without any separate identification. Thus, Arbitrator Gilsdorf did not exceed her powers and this ground is insufficient to vacate the Award.

Plaintiffs also claim that the Contract had escalating claims provisions which were conditions precedent to the attachment of arbitration rights. More specifically, Plaintiffs claim that before arbitration rights attached, the dispute must first have been submitted to the project architect for a decision and then to mediation. Arbitrator Gilsdorf likewise heard this argument and, in Order Number Two, gave the parties leave to file for mediation within seven days, or else waive the conditions precedent. D.E. 16-30 at 2. In short, Plaintiffs were given a fair opportunity to seek mediation if they so chose. But Plaintiffs failed to take advantage of this leave, and Arbitrator Gilsdorf deemed the conditions precedent waived. The Court cannot find that this reasonable accommodation was completely irrational or exceeded the arbitrator's powers such that the arbitration award should be vacated. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002) (noting that issues affecting whether a dispute is arbitrable, such as whether a condition precedent has been met, may be decided by the arbitrator). Plaintiffs were given the opportunity to exercise their right to mediation and, despite their current protestations, waived that right.

Plaintiffs also claim that M&M sought an extension of time to file for mediation, but Order Number Two stated that "ALL DEADLINES HEREIN SHALL BE STRICTLY ENFORCED. After such deadline, the parties may not seek an extension for such deadline except with the permission of the Arbitrator, good cause having been shown." D.E. 16-30 at 2. On May 12, 2021, after the deadline to file for mediation had expired, Mr. Teijido responded to an email chain including AAA, counsel for Defendant, and the arbitrator, and requested more time to file for

Case 2:21-cv-09274-JMV-JBC   Document 26   Filed 11/02/22   Page 16 of 22 PageID: 2013

mediation because Watts "decided to file a motion in federal court seeking to compel arbitration."[8] D.E. 16-33.  Arbitrator Gilsdorf found that no good cause had been shown for the failure to pursue mediation and deemed the condition precedent waived.  D.E. 16-29 at 1.  Plaintiffs were on notice of the deadline and the fact that it would be strictly enforced, failed to raise any confusion they had regarding the deadline, and provided an unsatisfactory excuse for their failure to file for mediation in time.[9]  Again, the Court cannot find that Arbitrator Gilsdorf was completely irrational or acted beyond her powers in finding that Plaintiffs waived their right to mediation.  The Award will not be vacated on this basis.

Plaintiffs also contend that the arbitration was incorrectly placed on the "fast track," which diminished their participation rights as to the selection of the arbitrator and was not properly available for arbitrations involving three parties.  Plaintiffs agree that the arbitration was converted to the "regular track" in Order Number Three.  Br. at 16; D.E. 16-29 at 2.  Given that AAA and/or Arbitrator Gilsdorf corrected the track designation, the Court finds that there is no "completely irrational" error that renders the Award subject to vacatur.  Moreover, Plaintiffs have not shown such a basis.

---

[8] Plaintiffs also claim that the deadline to file for mediation was less than clear.  Order Number Two states that the parties had "seven calendar days from the date hereof (May 11, 2021)" to file for mediation.  D.E. 30 at 2.  The order was entered on April 27, 2021.  While this provision could be interpreted as meaning seven calendar days from May 11, Plaintiffs did nothing to raise this lack of clarity at the time.  Indeed, when asked whether they would be pursuing mediation, Mr. Teijido indicated only that he had not done so "because Watts has decided to file a motion in federal court seeking to compel arbitration[.]"  D.E. 16-33.  Mr. Teijido does not seem to have timely raised his current position that the deadline was unclear and that he believed he had until May 18, 2021.

[9] In the Award, Arbitrator Gilsdorf noted that Plaintiffs frequently disrupted and delayed the arbitration process, showing that she had even greater reason to refuse to extend the deadline where no good cause was shown.  Award at 8.

16

In sum, the Court sees no sufficient basis to find that Arbitrator Gilsdorf exceeded her powers or acted in an irrational manner divorced from the parties' agreement.

### 5.   Public Policy Exception

In addition to the listed grounds for vacatur found in § 10 of the FAA, the Third Circuit has recognized that "an arbitration award may be vacated when enforcing it violates explicit public policy." *Caputo v. Wells Fargo Advisors, LLC*, No. 20-3059, 2022 WL 1449176, at *3 (3d Cir. May 9, 2022) (citing *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983)).  The Third Circuit has yet to determine whether the public policy exception survived the Supreme Court's holding in *Hall Street*.  *See Hall Street*, 552 U.S. at 586.  Yet, even assuming that an arbitration award may be vacated on public policy grounds, this exception is "slim" and "available only when the arbitration decision and award create an *explicit* conflict with an *explicit* public policy." *Caputo*, 2022 WL 1449176, at *3 (emphasis in original) (citing *United Transp. Union Local 1589*, 51 F.3d at 382).  The exception "does not . . . sanction a broad judicial power to set aside arbitration awards as against public policy."  *Serv. Emps. Int'l Union Local 36, AFL-CIO v. City Cleaning Co.*, *Inc.*, 982 F.2d 89, 92 (3d Cir. 1992) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987)).  The purported public policy must be "well defined and dominant" as well as ascertainable "by reference to the laws and legal precedents and not from general considerations of supposed public interests."  *W.R. Grace*, 461 U.S. at 766 (citation omitted).

Plaintiffs argue that "[t]he award issued violates basic contract principles as it relates to venue, jurisdiction, conditions precedent to arbitration, and whether standing exists as to non-signatories (i.e. Downtown Works)."  Br. at 31.  This amorphous and conclusory statement falls far short of establishing a public policy that is "well defined" and "explicit."  Thus, even assuming

the exception applies, Plaintiffs have not shown that the award here fits within the "slim" category of awards that may be vacated as against public policy.

Plaintiffs also argue that the Award "violates the Prompt Pay Act [N.J.S.A. 2A:30A-2] insofar as said statute provides that any action must be brought within the state." Br. at 31. The statute states that "disputes regarding whether a party has failed to make payments required pursuant to this section may be submitted to a process of alternative dispute resolution," and later notes that "any *civil action* brought to collect payments pursuant to this section . . . shall be conducted inside of this State." N.J.S.A. 2A:30A-2f (emphasis added). Plaintiffs have not cited to any authority demonstrating that a "civil action" encompasses alternative dispute resolution, and thus the Court does not find a "well defined" public policy that is grounded in law and precedent. Because no ground sufficient to vacate the arbitration award has been established, Plaintiffs' motion to vacate the Award is denied on this ground.

### B. Defendant's Motion to Confirm

Defendants cross-move for confirmation of the Award. D.E. 18. The FAA provides that "[i]f the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . the court must grant [an order confirming an arbitration award] unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. "There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except where one of the 'prescribed' exceptions applies." *Hall Street*, 552 U.S. at 587. The Contract explicitly provides that "judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof." Contract § 6.2.2. As noted above, the Court sees no valid reason for vacating the Award, and the parties have not requested any modifications.

Thus, the Court will grant Defendant's motion, confirm the Award, and enter judgment thereon for Defendant.[10]

### C.  Defendant's Motion to Dismiss – Collateral Estoppel

Defendant argues that dismissal of this matter is proper because Plaintiffs are collaterally estopped from pursuing their substantive claims.  Opp. at 30.  Essentially, Defendant claims that the issues submitted in the Complaint are identical to those already decided by Arbitrator Gilsdorf in the arbitration.  The Court agrees.

AIA Document A201 § 13.1, incorporated by reference into the Contract, provides that "[t]he Contract shall be governed by the law of the place where the Project is located," with the exception, noted above, for application of the FAA to arbitrations.  The project was located in Camden, New Jersey, requiring the application of New Jersey law to determine whether Plaintiffs are collaterally estopped from pursuing their claims.[11]

The doctrine of collateral estoppel, or issue preclusion, "bars relitigation of *any issue* which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action."  *Tarus v. Borough of Pine Hill*, 189 N.J. 497, 520 (2007) (emphasis in original) (citation omitted).  For the doctrine to apply, the party asserting the bar must show that

> (1) the issue to be precluded is identical to the issue decided in the
> prior proceeding; (2) the issue was actually litigated in the prior
> proceeding; (3) the court in the prior proceeding issued a final

---

[10]  Plaintiffs argue, without authority or analysis, that the "counsel fees awarded were unconscionable and contrary to established precedent," and that Arbitrator Gilsdorf did not "scrutinize the fees, or otherwise question whether they are reasonable and appropriate, or even how they were generated."  Pl. Opp. at 37.  In the Award, Arbitrator Gilsdorf noted that "[a]fter careful review of Claimant's legal invoices," the number of hours spent by counsel were reasonable, as was the hourly rate charged.  Award at 8.  Plaintiffs have not shown any basis, other than a conclusory argument, that the counsel fees were improper.

[11]  Defendant also cites to New Jersey law for its collateral estoppel analysis, Opp. at 30, and Plaintiffs do not dispute application of New Jersey law—indeed, Plaintiffs cite to no authority whatsoever.  Pl. Opp. at 38.  *See also Murphy v. Landsburg*, 490 F.2d 319, 322 n.4 (3d Cir. 1973).

> judgment on the merits; (4) the determination of the issue was
> essential to the prior judgment; and (5) the party against whom the
> doctrine is asserted was a party to or in privity with a party to the
> earlier proceeding.

*Sacharow v. Sacharow*, 177 N.J. 62, 76 (2003) (citation omitted).  "[I]n appropriate circumstances

an arbitration award can have a res judicata or collateral estoppel effect in subsequent litigation."[12]

*Nogue by Nogue v. Est. of Santiago*, 224 N.J. Super. 383, 385-86 (App. Div. 1988).  The arbitration

must have "entailed the essential elements of adjudication," which includes adequate notice, the

right to present evidence and legal arguments, a rule of finality, "a formulation of issues of law

and fact in terms of the application of rules with respect to specified parties," and "such other

procedural elements as may be necessary to constitute the proceeding a sufficient means of

conclusively determining the matter in question."  *Id.* at 387 (citing Restatement (Second) of

Judgments § 83 (Am. L. Inst. 1982)).

Here, the issues raised in the Complaint are identical to the issues raised, litigated, and

decided in the underlying arbitration (and confirmed above).[13]  Arbitrator Gilsdorf was presented

with arguments regarding Watts' purported breach of contract, and explicitly decided that Watts

was not in breach and "performed its work in accordance with the provisions of its contract with

M&M Development and that such work was accepted by [M&M and Downtown Works] as

---

[12] Moreover, the FAA explicitly provides that judgments entered by a federal court confirming an
arbitration award "shall have the *same force and effect*, in all respects, as, and be subject to all the
provisions of law relating to, a judgment in an action[.]"  9 U.S.C. § 13 (emphasis added).  While
some courts "refuse[] to give unconfirmed arbitration awards issue preclusive effect," *Gruntal &
Co., Inc. v. Steinberg*, 854 F. Supp. 324, 337-38 (D.N.J. 1994), the Award here has been confirmed
by the Court, as noted above.  Thus, the judgment confirming the Award is entitled to preclusive
effect, where appropriate.

[13] As Arbitrator Gilsdorf noted in the Award, the "counterclaim" brought by M&M in the
arbitration was a copy of the complaint filed in the New Jersey Superior Court action, which was
later removed to this Court and is identical in substance to the operative Complaint in this matter.
Award at 2.

evidenced by testimony and exhibits presented at the hearing as well as evidenced by the payment made upon completion of the enumerated items." Award at 5. That determination was essential to the Award because a failure to decide those issues would have left all counterclaims unresolved. The Contract notes that "[t]he decision rendered by the American Arbitration Association shall be final." Contract § 6.2.2. Thus, the identical issues were raised in the arbitration and determined on the merits by Arbitrator Gilsdorf in a final decision. Disposition of those claims was essential to the Award, and the arbitration had identical parties to the present action. All of the elements of collateral estoppel under New Jersey law are satisfied.

The arbitration here also satisfies the Restatement (Second) of Judgments' requirement that the proceedings "entail[] the essential elements of adjudication." Arbitrator Gilsdorf noted in the Award that "AAA continued to copy and provide notice to both M&M and Downtown Works" throughout the arbitration. Award at 2. Plaintiffs also had and exercised the right to present evidence and arguments, and the arbitration was facilitated by the AAA, a preeminent alternative dispute resolution organization. Based on these factors, the Court finds that the arbitration proceedings "entailed the essential elements of adjudication" in satisfaction of the Restatement (Second) of Judgments. Plaintiffs are thus precluded from re-prosecuting these claims in this Court, and the Complaint is dismissed.

IV.    **CONCLUSION**

For the reasons stated herein, Plaintiffs' motion to vacate the arbitration award is **DENIED**.

Defendant's cross-motion to confirm the arbitration award is **GRANTED**, and judgment will be

entered in favor of Defendant.   Defendant's motion to dismiss is likewise **GRANTED with**

**prejudice**.   An appropriate Order accompanies this Opinion.


Dated: November 2nd, 2022

_____
John Michael Vazquez, U.S.D.J.